Argument not to exceed 10 minutes for each defendant and 20 minutes for the plaintiff. Good morning. I am Richard Tennant. I am here for Khaled Fattah. There are a few analytical ways to view this loss of material and exculpatory evidence. Myself and Ms. Sherwood have kind of divided them up, but they both lead to the same result, which is dismissal of the indictment. I am looking at this from the perspective of safe cash as an agent of the United States. Ms. Sherwood will address the United States standing alone in their own responsibilities. And I also am going to focus on the exculpatory nature of the evidence as it went to sentencing. And Ms. Sherwood, as the lawyer who tried the case, who is a lot more adept at this, will address impeachment and guilt-innocence issues. Safe cash was an agent of the United States. They did something that was quintessentially a government function, a forensic computer evaluation that they could... Going to do an investigation? It seems like a pretty good idea. I think it is, but they wouldn't have done it is what the facts of this show. That in their case, they, for whatever reason, never printed out journals from their ATMs. They did not keep these records. So these are not regularly recorded business activities. For instance, if the government had said, hey, give us your business records, and they said, here this is, that would be different. But that's not what was happening here. Moreover... I don't understand your first answer. Okay. They conduct an investigation because someone took money that wasn't theirs. That's pretty normal, right? For a company. Wouldn't that be utterly irresponsible to not do that? You're right. And it would be. But in this case, they testified they didn't have the ability. Indeed, they had only identified suspect transactions at one ATM machine, which I'll call Petro Express. It was the government that exercised its subpoena power, which I'll call a course of power, to subpoena the defendant's bank records, which under Tennessee law were records that Safe Cash had no right to. But they had made a report to the authorities about the claim. And then they were investigating, and the authorities undertook another action, which was to subpoena the bank records. Yes. So is there a problem in your estimation with does it make you an agent when you're running an independent business investigation and you report it to the police and the police say, oh, well, we've gotten their bank records and we're seeing this in other locations. If the company then uses that information to submit their own insurance claim, help me understand why that makes them an agent, the investigatory agent of the government. Because they were gathering something that they did not regularly gather, one. Two, again, those bank records. Well, they didn't regularly gather because they were only looking at one machine. Am I right? And so now they know, as soon as they know that other machines might be indicated, then they undertake that as their own investigation, don't they? Wouldn't their shareholders be unhappy if they knew that there were many more ATMs that had been invaded that way and the company hierarchy did not investigate it? I think the record may show there's two owners of this, and one of them is the one investigating. But also I think your question is really important because they didn't do it. That's really important to note. Well, they didn't do it until they knew about it. Well, no, they actually failed. That's so important here. They failed. The bank records identify 18 machines, and we've extrapolated on this 20 to 1 ratio that every time these gentlemen withdrew money from one of those machines we should multiply it by 20 to say loss. But they only found denomination change or any records at three of those 18 machines. Three of the 18. I'm sorry. I'm still back on the agency question. Okay. Am I invading the next argument's territory? We can hold on. It's a good point. Do you want to talk about agency or do you want to talk about something else? Well, it is about agency in my way. It is that they are doing a forensic exam for the government, okay? A forensic exam that's incredibly crucial to these defendants, right? And this is part of my argument. While you're explaining that, is there evidence in the record that the government thought that they were doing the forensic investigation for them? Absolutely. Agent Eves, I believe, testified. I just took everything they gave me. Well, that's a different question. Yeah, that's a different question. Is there evidence in the record that the police or the investigatory bodies said or understood or thought that Safe Cash was doing the investigation for them? Could you point me where in the record that is? I won't give you the site, but I will say at the evidentiary hearing, they testified that in state court they were having a hearing where they thought everything was going to be resolved and the police came in and they said, hey, we've got more bank records. You need to go look at your machines and see if there's more, okay? So I think that's one. That's when it was in the state system. And then, secondly, this is interesting. Another part of agency, you'll see in the government's discovery response, they tell the defendants the ATMs are available for inspection, right? Normally when I'm told that something's available for inspection, I go to the U.S. Attorney's Office, they lay it out on the table in front of me. Normally it's drugs, guns, whatever it is. In this case, available for inspection actually meant Safe Cash has it, which turned out not to be quite true. But the government was allowing or keeping the evidence in the hands of Safe Cash. And they were saying, hey, we agree this is evidence that you all are entitled to and it's available for your inspection, but, by the way, Safe Cash has it. I thought your main fuss was that 17 of these 18 ATM machines were destroyed. It is. If that's the case, what evidence in the record shows that the machines were destroyed by Safe Cash in a violation of the government's obligation to preserve evidence under Brady? Okay. I mean, why the record I thought showed Safe Cash destroyed these machines because the government decided under the Americans with Disabilities Act that these machines had to be available for sight-impaired people and it was easier to buy new machines than refit these old ones. Is there any evidence to the contrary of why these machines were destroyed? No. I think that the machines, at least according to the record, that is why the machines were destroyed. That's true. And so that would go to a back... The government had no involvement in that decision. That was just Safe Cash's business decision, right, to replace these machines to comply with the Americans with Disabilities Act. But Safe Cash, after they'd exercised control over these machines, their own machines to exercise control over, obviously, and they've gathered very selective information, which, again, I just want to point out. We know they didn't gather everything. We know that because... Okay, fine, fine, but answer his question. Okay. So you're right. They had an ostensible reason for the destruction of the machines, but that doesn't matter under Trumbetta. This is a Brady claim. Well, it's a Trumbetta claim. I mean, ultimately, there's two ways of looking at it. One is under Trumbetta, where it doesn't matter if you have a good reason for destroying evidence. If it's obviously material and exculpatory, destroying it is a due process violation. By the government. Right, right, right. That's what... Yeah. Right, right, right. Yeah, you just put this under your breath. Right, right, right. This is the point of his question. You have to clear this hurdle. We can talk about other things for the next five minutes, but if you don't clear this hurdle, they're not going to do anything for your clients. So it's really a good idea to explain why this is government action. It's government action because Safe Cash was made the forensic examiner in this case. They were vested to do something by the subpoena power that they could not do otherwise, and... But even if they acted as the government's agent for the forensic investigation, that's a separate issue from were they the government's agent. The government was telling them to destroy the evidence. Well, I think this is important. It's both destroy and failure to preserve. They claim they looked at 18 machines. They claim that. But they didn't gather the information. Their eyes did. All right? I mean, it's like a police officer, and I am over time, so you just stop me. A police officer is sitting there looking at the evidence. It's right there. He's got it. Okay? So the government was supposed to come in and put an order, don't destroy the machines? Is that what you're arguing? Oh, I think they should have. Absolutely. That's what your argument is. They absolutely should have told... Well, they should have gathered all the information. I mean, ultimately, these machines had data on them. The data could have been preserved. I mean, we're all used to... You see so many forensic exams. We all know that you can copy a hard drive. I think we got your point. We'll hear from your co-counsel, and you guys will get your full rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. I'm Cynthia Sherwood, and I represent Chris Fallot as I've done since the inception of this case. As Mr. Tennant said, I'm going to address two issues. The first is that the defendants' due process rights were violated by the government's failure to collect the extant material evidence that was material exculpatory or at least potentially useful. The stuff that's on the machines. Is that what you're referring to? The electronic journals that are on the machines and the actual ATMs themselves. So there was evidence at the evidentiary hearing that without... I can get into this more in depth, but there was inspection of the ATMs was required to determine what type of functionality the ATMs had and whether they could actually perform the denomination changes that the defendants were accused of doing. Just a minute. I just want to make sure I'm following you guys' arguments. There's stuff that's exculpatory where Brady says, preserve it. There's stuff that's potentially exculpatory where you've got the additional requirement of showing bad faith by the government. When it comes to stuff on the ATMs, I have to believe that's potentially exculpatory. You don't know that that... In fact, I would have thought it was, frankly, incriminating. I think your clients were lucky these things were destroyed, is my guess. But put that to the side. This has to be about potentially exculpatory, and if that's true, where's the evidence of bad faith? Because it's just not worth talking about this if you don't have evidence of bad faith. Yes, Your Honor, I would like to address at some point about why I think it was material exculpatory and the government should have been aware at the time they allowed Safe Cash to destroy it. I'll just briefly say that, and that's the electronic journals. And I've got site after site after site. Judge Stranch, you asked a moment ago about where's the site in the record that the government relied upon Safe Cash to do this investigation? And the record is replete with that, and I can give you... I'm just struggling with the distinction between taking their evidence and relying on the evidence that they gave them versus charging them with a responsibility. And as I understood it, that Mr Tennant was making the argument that Safe Cash was the agent, and your argument is it doesn't matter what Safe Cash was, the government had an independent responsibility to collect this evidence. Yes, Your Honor. Right, OK. And whether it's a duty to collect, or if it's just... Or preserve. Preserve existing evidence of which they were aware. But your argument does not depend on the agency between Safe Cash and the government. Absolutely not. Is that correct? Absolutely not. OK, so explain why they had a responsibility. To collect? Or do I need to go back to Judge Sutton's question? Answer his question first, sorry. I apologize, I got sidetracked. So with respect to the bad faith analysis, we say absolutely these ATMs contained potentially exculpatory information, potentially useful information, if you use the language of Jobson. So where's the bad faith? The bad faith is if you look at all of the cases, all of the Sixth Circuit cases, or even if you go back to as early as Trombetta, what the cases look at... Bad faith is defined as official animus, which is something just terrible, or a conscious effort to suppress evidence. In every case that I've looked at, what the government... To destroy it. The courts look at... But the government didn't destroy it. They allowed the destruction of it. They had a duty to preserve it because it was extant evidence. They took these electronic journal records, and they took inculpatory... How is it bad faith if there are regulations that require replacements of ATMs that follow the regulations? I'm paying a penalty, they replace them, and that's the prosecutor's bad faith? I'm not alleging bad faith because of that. I'm alleging bad faith on the prosecution because when the prosecution knew and the Secret Service knew, these journal prints existed and these ATMs existed. Special Agent Lee Eves was the digital forensics agent out of the Nashville office. There's an entire manual dedicated for the Department of Justice on how to preserve electronic evidence. Special Agent Eves knew this. He knew that the entire journal record, not select portions of it, would need to be preserved so we could say... The 39-page spreadsheet that Safe Cash gave the government immediately shows, and the evidence you're hearing shows, that some of these withdrawals were not fraudulent. Absolutely were not. There were only denomination changes for eight counts. Why would the fact that there's some innocent withdrawals prove that the rest were innocent as well? Family members can use the same ATM card and take out money. They're not part of the fraud and they're using it in a normal way. I just don't know what that shows. It shows it's subject to testing. Some of these would have showed the absence of denomination changes. We absolutely know that the 60... Right, so a family member with the same ATM card just takes out money. There's no denomination change. It's innocent.  They listed it as a fraudulent transaction on their 39-page spreadsheet. I thought they excluded those. I thought the evidence... Am I incorrect? Doesn't the record indicate that the government excluded those $6 and $13 or $130 or whatever could not indicate a denomination change? By the time we got to trial, the government had cleaned up this Safe Cash 39-page document and they had eliminated everything that wasn't possible, thereby leaving... That sounds pretty good. Leaving every single $40 transaction on there as a fraudulent transaction just because it was possible that it happened during a denomination change. The truth is there are only a denomination change for eight counts in the indictment. I do want to address your issue about bad faith briefly. The case is Wright. Wright is the fire warehouse case. Judge Gilman, you wrote the concurrence on that. What the court did to decide whether there was bad faith is they looked at what policy and procedure followed. The government in this case just said, we didn't need that, we just relied on what Safe Cash gave them. In Wright, the court went through and they said the electrical evidence was destroyed by the government only after an independent fire investigator determined that none of it was relevant to this case. The warehouse was over 120,000 square feet. We don't find it was bad faith for the government to have destroyed this evidence. If you look at Cody, this was the video from the bank robbery. The police preserved these videos momentarily because they knew this convenience store had deposited dye-stained money into an account. They realized the dye-stained money had absolutely nothing to do with that bank robbery because the dye-stained money came from another account, so they destroyed the tapes. What the court said there was it's not bad faith because they determined it wasn't relevant evidence. Wilson v. Sheldon case, I don't know if we've cited this one, but the Detroit Police Department let a video be destroyed just because they thought it had a different statute of limitations. It was an innocent mistake. One thing, I don't know which one of you wants to do this in rebuttal. I'm interested in the government too. It has to be the case that there's no problem when someone's defrauded to have an investigation. That has to be right and that has to be okay. That doesn't trigger Brady. That just would be very bizarre to me. What I'd be really interested to hear from you and from the government is when we have that customary thing happen, what's an appropriate time for Brady to be triggered? I'm just interested. Ideally, you'll do it in a way that helps your defendants here, but I'd be curious what that rule is. Thank you. We'll hear from the government. Ms. Harris. Good morning, and may it please the Court. Amanda Harris on behalf of the United States. Your Honor, I'd like to begin with the first point here that we discussed earlier with the proposing counsel, and that is agency. There is no agency in this case, and therefore the defendant's due process claims fail. As a district court . . . But at some point . . . What's the answer to the question I just asked? At some point, if you find fraud in your company, you're pretty likely to turn it over to the government. That's okay. Nothing wrong with that. When does Brady arise? At that point, the government now has it. Presumably it's investigating. It may not have control over everything, right? The company still has control of its computers or ATMs. How is this supposed to work? That's correct, Your Honor, but I think agency would only be implicated when there is some sort of nexus between the alleged constitutional violation, the government, and the private actor. That's the way agency works for Fourth Amendment claims. You're focused on the fact that the ATMs were destroyed by the company without the government's involvement for a legitimate reason. But let's just forget this case. It seems like a really good point here. But how should this normally work? And why isn't it appropriate at some point for the government to say, hey, by the way, the ATMs are relevant. So are the computer programs. So is all this other data. You didn't have to turn this over to us. You did turn it over to us. We're going to investigate. We have to. Why isn't it appropriate for the government to communicate at that point, hey, listen, this is a potential criminal investigation. We think you need to save X, Y, and Z. It seems like that's the way it should normally work. Your Honor, I would agree that it may have been better practice here for the government to have looked at the ATMs themselves or asked to save cash to preserve them. But that's not the question that the Supreme Court has said is at play for due process purposes. The question is whether the government failed to preserve the evidence. There is no duty to collect evidence. There's no binding authority to suggest that the government has some sort of duty to collect evidence. I guess what I'm struggling with is, as your opposing counsel spoke, the explanation was the government must have believed that it had evidence that the defendants had a right to have or they wouldn't have informed you about it. So we have this disclosure that should be expected and Mr. Tennant goes to your office and there's nothing on the table. If you owe the responsibility to tell him about that, when do you then owe the concomitant responsibility to preserve it for him to see rather than just saying safe cash has it? Well, Your Honor, in this case, under the effects of this case, everyone believed, as the district court found, that these ATMs wouldn't have been helpful to either party because... Yeah, I think that begs my question. What I want to know is if you thought you had the responsibility to tell the defendant that this evidence existed, then when do you also have... the concomitant responsibility arise to then preserve it? Well, Your Honor, I think the Supreme... As I just said, I think the Supreme Court has been clear that the duty arises when the government fails to preserve the evidence and the government just didn't take in this evidence in this case and although that may have not been the best business practice or the best practice of the government, ordinarily the government wants to collect as much evidence as possible, it just simply didn't do that in this case. But that doesn't give... Back to Judge Sutton's question, what is the trigger? Can you always say, you know, these fraud claims, they cost us a lot of money to investigate, we're just going to let the company do it every time. And then we're going to say to the defendants, company did this, there is information from their ATMs or from their computers or whatever else, no, it's not on the table, they have possession of it, and then do nothing further to preserve it. Your Honor, there may be a claim that if there was evidence that was obviously going to be useful to the defendants that if the government acts in bad faith, for example, that's what the Ninth Circuit did in the only case to have said there's some sort of duty to collect evidence, that if the government does so in bad faith, that may give rise to a due process violation. But here there is just simply no showing of bad faith, so even assuming that there may be some sort of duty to collect evidence that could be helpful to a defendant, I think this, as the District Court found, this evidence was only potentially useful to the defendants and more likely would have been inculpatory rather than exculpatory. But even assuming that was the case and there's some sort of duty to collect that evidence, that's only a due process violation when there's bad faith on the government. And that's because the Supreme Court in Trumbetta and Youngblood were very cautious about imposing on the government and police investigations some sort of duty to rise to a certain level of collecting specific types of evidence or using specific police tools. And so Youngblood and Brady are both sort of backstops on the government. What would have happened in this case if Safe Cash does this investigation, they turn this over to the government, the government gets a computer technician expert to do this forensic evaluation, goes through all 17 of them and issues a report that proves these, I mean just makes all the other evidence irrelevant. You don't need anything else after you've got this. Makes it crystal clear that these two defendants are guilty of the crimes charged. And then with no involvement by the government, Safe Cash destroys all of them. How would that work? Would the government still be able to put on that expert testimony? So I'm sorry, you're saying that had the... their own witness they pay for to go investigate, they do a forensic examination report that conclusively proves the defendants are guilty of these crimes, then with no involvement by the government, Safe Cash destroys all the ATMs. We'll call it for other legitimate reasons. Can the government still use that expert report to prove them guilty? Assuming that the technician, did the technician print out, for example, the ATM journals? He just sort of reviewed them and wrote them down. There's nothing left. It may be a closer call in that case, Your Honor, although at that point, it seems like it wouldn't have been exculpatory or potentially useful to the defendants and so I'm not sure what . . . Well, it's not like our case because the district court here said it wouldn't have made a difference one way or the other, but I'm just . . . it's a hypothetical. This one turns out to be very inculpatory. That's correct, Your Honor. But the problem is, of course, the defendants are saying, yeah, it's inculpatory because it was a government agent and he chose to find the stuff that was inculpatory and we never got a chance to look at the machines and how can we disprove this? Your Honor, I think if it hadn't have been inculpatory or, I mean, if it hadn't have been exculpatory or potentially useful to the defendants, presuming it probably, we could say, at best, would have been potentially useful to the defendants, the defendants would have to show that the government acted in bad faith. My case does not have bad faith in it. Then I don't think that there would be a due process violation in that instance, Your Honor, although it may be a closer call, but I don't see how if there isn't any evidence that would have been exculpatory or potentially useful, then Trombetta and Youngblood simply are not implicated. No, it's clearly potentially useful. Then it's clearly potentially useful. If it's potentially useful, Your Honor . . . Which requires bad faith. That requires a showing . . . Hypothetically has no bad faith. Then there is no due process violation, Your Honor, and the government would try to seek to use that evidence, I suspect. In this case, however, Your Honor, the government never had possession of the ATMs or the ATM journals, and again, although that may have been better practice, this Court and the Supreme Court and Youngblood have been very clear that even if that amounts to some sort of negligent practices on the part of the government, that's not enough to give rise to bad faith. Well, the government had the one journal and all the other tidbits. Is that how you call them, the tidbit evidence? That's correct, Your Honor. So that was made available, but the ability to investigate beyond the tidbits that were given was denied? That's correct. The defendants were not able to access the ATM journals for some of the other counts in the indictment and for, of course, the lost amount, which is what the defendants . . . I guess we're back to the same potential question. How much can the government outsource and not fall into an agency category? Your Honor, I'm not . . . Again, I think that the level is when the government is in possession of the evidence and doesn't . . . fails to preserve it. That's when you have a Trombetta or Youngblood potentially a violation. And here, just to be clear on the facts, there was no outsourcing of the investigation. The Safe Cash's internal audit was completely concluded by the time the government came involved in this case. And with regard to local authorities, I think there was a . . . at page 575 in the record, really what happened was that the local authorities suggested to Safe Cash that there may be other instances. Why 2010 to 2015? I mean, this took an awful long time, and had it not taken so much time, maybe the ATMs wouldn't have been destroyed. Your Honor, there was an allegation of a pre-indictment delay, and the district court found . . . That's not based on appeal, but the district court found a couple of things happen. First, there was a change of agents. There was initially one agent on the case, and then a second agent came on. There was also a change of the AUSA prosecuting the case. Additionally, 2012 was a presidential election year, and the agent involved in the case was on security detail for the majority of that time. And the last thing that the district court said was that the defendants made clear from the onset of this case that they weren't willing to enter into plea negotiations, and so the government needed to seek out additional evidence to prove the case. For example, investigating these car purchases, as well as receipts tying the specific defendants to the debit cards that were used at the various Safe Cash ATMs. And so that was the reason for the delay. Additionally, the conduct that happened in 2009, the fraud from that point, of course, wasn't discovered until mid-2010. If you want to have no further questions, I think that the agency question is clear in this case. Safe Cash was not an agent of the government.  And the alleged due process violation here, and I think that really ends the inquiry as to whether— Did you raise your argument that the dismissal of the indictment is the wrong remedy before the district court? No, Your Honor. I sort of have two responses to that. This court can affirm for any reason. I believe the government can defend the judgment for any reason. Additionally, at the motions hearing, the argument primarily surrounded how this evidence may have been potentially useful at trial, although I think the defendants did raise the issue of loss amount. It certainly wasn't the focus of the motions hearing. And then at sentencing, I don't believe Trombetta and Youngblood were raised again, although, again, the defendants did object to loss amount calculation. They did not reassert that perhaps we should calculate loss in a manner that would omit sort of any missing information, and that's why the government didn't discuss this remedy problem below. I understand your argument. Thank you, Your Honor. We respectfully request that this court affirm. Are you guys dividing, Rebuttal? I can't remember. What's the plan? I'm going to give you one minute, and I'm going to try to answer your question, Your Honor. Okay. I think that when the government received the tidbits, the partial information that was clearly part of a larger sum of information, and they correctly recognized, as Judge Stranch, you pointed out, that this was material, and that the entirety of it was material. I think at that point the Brady or the Trombetta or the Youngblood obligation applied, and I think it's your suggestion, Judge Sutton, I think they did have a responsibility at that time, because I agree, physically they shouldn't be taking 18 ATMs into their possession. That's something of value to Safe Cash. That's fair. They shouldn't be taking private citizens' property as evidence if they don't have to. But they should, at that point that they've recognized this, be requesting that Safe Cash preserve this. If this was civil litigation and Safe Cash was suing the defendants and then Safe Cash had destroyed this, obviously that would bode ill for Safe Cash. I'm not a civil lawyer, so I'll defer to you as to how ill, but I don't think that would have been a good thing. It's actually pretty complicated. Read the Silvestri case. Okay. And lastly, if I can say this, Your Honors, and everyone who's had this case has said, well, probably this stuff would have been bad if it had been found. And that is absolutely, when you read this, that's a natural thing. I'm coming at this from the outside, so I would have that natural reaction too. Youngblood, please remember what happened in Youngblood. Isn't that the case that required bad faith? It is. Youngblood was exonerated. The DNA ultimately exonerated him when better testing came about. So everybody looked at Youngblood and they said, this isn't going to be helpful. This is at most potentially exculpatory. As it turned out, with better DNA testing, the man was acquitted and was set free. So it's hard. I mean, I agree. I get your reaction that this was probably hurtful, but we never know what's inside that box once it's destroyed. I don't know if that is the full answer that you wanted, Judge Sutton, but I just wanted to point out, just to add to what Mr. Tennant said, that this evidence was identified. This evidence, as soon as the government got this case, the evidence was identified. The journal prints, they knew how important and how material it was. Special Agent Eves called it my best evidence. I had all of the evidence of the fraud captured. They had to know that that full record, the document they've already identified as the best evidence, the missing pages, might be useful to the defense. And because they said that, as I said, Safe Cash had already gathered all the evidence. That's on page 801, where Special Agent Eves says that. They had a duty to preserve the rest of the evidence, the rest of the document for us to see. You're in Youngblood. You're in Youngblood territory. In Youngblood. So what is your best evidence of bad faith, your best argument for why? The best evidence of bad faith, that this investigation was so lacking that it amounts to a suppression of evidence. They did nothing. They sat and let Safe Cash, this self-interested party, to the tune of $600,000, do the entire investigation. Surprisingly, all they found was inculpatory information. Anthony Garrett never... Why were they self-interested once the insurance was done? That's what happened before. If you look at the... I don't know if it came out of the trial or the sentencing here, but I think at the trial they only... First of all, when they first started working with the Secret Service, that was years before, two years before, the insurance had paid off. They filed a $600,000 insurance claim on $60,000 loss. Even after the insurance company paid off, they still only got $400,000 from the insurance company. And you have to ask why, because that's less than their policy limit. They were very self-interested in this amount of time. All right. Well, I mean, if you had something, a Eureka moment for us, I'll take it. But if it's not a Eureka moment, I think we'll go to the next case. I don't know what that is. Eureka, a really great point. I mean, I know what that is, but I just didn't get a chance to address Judge Strange's collection question. But it is in our brief while we believe there's a duty to reflect. All right. Thanks to all three of you for your helpful briefs and oral arguments. We're grateful for that. The case will be submitted, and the clerk may call the last case.